E-FILED
Friday, 02 October, 2026 09:27:20 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| **RANDALL J. BEHNING,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:19-cv-04225-MMM** |
| | ) | |
| **KEVIN JOHNSON *et al.*,** | ) | |
| **Defendants.** | ) | |

**ORDER**

**MICHAEL M. MIHM, United States District Judge:**

Before the Court is a Motion for Summary Judgment (Doc. 98) filed by Defendants Timothy Greene, Kevin Johnson, Mark Johnson, Jason B. Kersh, Barbara A. King, and Scott W. Stewart. Plaintiff Randall J. Behning, an inmate at Menard Correctional Center, has responded (Doc. 104) and Defendants have replied (Doc. 105).

## I. BACKGROUND

In November 2019, Plaintiff filed a Complaint (Doc. 1) under 42 U.S.C. § 1983, alleging constitutional violations at Hill Correctional Center ("Hill"). After screening the pleading, the Court concluded Plaintiff stated the following Eighth Amendment claims: (1) excessive force against Defendants K. Johnson and John Doe, (2) failure to intervene against Defendants M. Johnson and Timothy Greene, and (3) deliberate indifference to his serious medical needs against Defendant Paula Young. The Court also determined that Plaintiff stated a Fourteenth Amendment due process claim against Defendants Jason B. Kersh, Barbara A. King, and Scott W. Stewart, acting collectively as an Adjustment Committee.

The Court dismissed Defendant Doe because Plaintiff did not file a Motion to Substitute

Doe with an identified person within the time specified in the Court's Scheduling Order. (Docs. 26 at 4:9, 50 at 3.) The Court later granted summary judgment to Defendants Greene, M. Johnson, K. Johnson, Kersh, King, Stewart, and Young, concluding that Plaintiff failed to exhaust his administrative remedies before filing his lawsuit. (Docs. 48 at 6-7; 50 at 8.)

Plaintiff appealed (Doc. 52), and the Seventh Circuit affirmed in part, vacated in part, and remanded for further proceedings. *Behning v. Johnson*, 56 F.4th 1137, 1140 (7th Cir. 2023). Specifically, the Seventh Circuit held that Plaintiff had exhausted his administrative remedies on his non-medical claims.[1] *Id*. The Seventh Circuit affirmed the Court's judgment in all other respects. *Id*. at 1138.

After the Seventh Circuit issued its mandate (Doc. 67), the Court entered an Order (Doc. 68), clarifying the remaining claims as follows: (1) Eighth Amendment excessive force against Defendant K. Johnson; (2) Eighth Amendment failure to intervene against Defendants M. Johnson and Greene; and (3) Fourteenth Amendment due process against Defendants Kersh, King, and Stewart.

## II. SUMMARY JUDGMENT

### A. Standard

"The court shall grant summary judgment if the movant shows … no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific citations to admissible evidence or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(1). "If the moving party has properly supported

[1] Plaintiff did not appeal the Court's judgment as to Defendant Young.

his motion, the burden shifts to the [nonmoving] party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

Nonmovants may not rest on their complaint allegations; they must point to admissible evidence in the record to show a genuine dispute exists. *Id*. "Conclusory allegations, unsupported by specific facts will not suffice." *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "A dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a dispositive motion, the Court construes all facts and inferences drawn in the nonmovant's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

**B. Excessive Force**

Under the Eighth Amendment, prison officials may not use excessive physical force against prisoners. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "The use of force qualifies as excessive for the purpose of Eighth Amendment . . . when it entails the 'unnecessary and wanton infliction of pain.'" *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 667 (7th Cir. 2012) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "[T]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. "Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Lewis*

*v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009); *see also Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). "[S]ummary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) (citing *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009).

In support of his claim that he is entitled to summary judgment, Defendant K. Johnson provides the following facts.

On November 23, 2018, Defendant M. Johnson asked Defendant J. Johnson to accompany him while he provided medication to Plaintiff, who had missed Medline. After arriving at Plaintiff's cell, J. Johnson opened the door, and Plaintiff immediately and aggressively exited his cell and moved within arm's reach of both officials. J. Johnson directed Plaintiff to take his meds and lock up. Instead, Plaintiff continued to argue, threaten, lunge at, and grapple with J. Johnson, who continued attempting to use minimal force to create distance by pushing Plaintiff away. At one point during the altercation, J. Johnson could not break Plaintiff's grasp, which caused him to deliver closed-fist strikes to Plaintiff's head in an attempt to loosen his grip. Within seconds of those strikes, responding officers arrived and brought Plaintiff to the ground to be restrained. (J. Johnson Decl., Doc 98-1.)

In contrast, Plaintiff stated during his deposition that on November 23, 2018, he was locked in his cell and, as a consequence, missed the dispensing of his daily medications. Plaintiff asked his gallery officer, Defendant M. Johnson, who Defendant J. Johnson accompanied, if M. Johnson could call the nurse over to dispense his prescribed medications. Plaintiff claims that J. Johnson began yelling and opened Plaintiff's cell door to begin an extraction. Plaintiff observed

J. Johnson's demeanor, the tension in his arm when holding the cell door open and believed that J. Johnson intended to hit Plaintiff with the heavy cell door. Plaintiff claims that J. Johnson "launched into a tirade" and struck Plaintiff. (Pl. Dep., Doc. 98-6 at 33:19-35:12.)

Defendant J. Johnson asserts that he is entitled to summary judgment because the record shows he consistently worked to minimize the force he used against Plaintiff to restore order and discipline. The Court disagrees.

If Defendant J. Johnson's factual account were undisputed, then resolution of Plaintiff's excessive force claim becomes a legal issue. *See Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir.2003) (concluding that "when material facts (or enough of them to justify the conduct objectively) are undisputed, then there would be nothing for a jury to do except second-guess the officers."). But Plaintiff testified to his version of events during his deposition.

In this regard, Defendant J. Johnson initially acknowledges that although "Plaintiff's telling of events occasionally agrees with other evidence, in the parts which are critical to his establishment of a genuine dispute of material fact, they are both unsupported by other evidence and utterly implausible in light of all relevant circumstances." (MSJ, Doc. 98 at 10.)

"The utter-implausibility exception to the general prohibition on resolving factual disputes at summary judgment is reserved for the 'exceptional' and 'extreme' cases." *Whitaker v. Dempsey*, 144 F.4th 908, 918 (7th Cir. 2025) (quoting *In re Chaven*, 150 F.3d 726, 728 (7th Cir. 1998)). "For the case to be classified as extreme, the testimony sought to be withheld from the trier of fact must be not just implausible, but utterly implausible in light of all relevant circumstances." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).

In *Whitaker*, the Seventh Circuit affirmed the application of the utter-implausibility

exception to a deliberate indifference case in which the plaintiff's deposition testimony conflicted with the defendant correctional officer's affidavit, which created two disputed issues of fact material. 144 F.4th at 916. First, the parties disputed whether the defendant saw the plaintiff hold up a sharp metal object and threaten to injure himself before cutting his arm. *Id*. The parties also disputed whether the defendant waited five minutes after seeing the plaintiff begin to cut himself with the sharp object before calling for assistance. *Id*. If a jury resolved both factual disputes in the plaintiff's favor, it could find that the defendant was aware that the plaintiff faced a serious risk of self-harm and that he was deliberately indifferent to that risk. *Id*.

The Seventh Circuit determined that the plaintiff's account of the incident was "so flawed and so self-contradictory that no reasonable jury could conclude in his favor the factual disputes about the sharp metal object and the five-minute gap." *Id*., at 918-19 (internal quotation marks omitted). Specifically, the Court noted that "[n]early every time that [the plaintiff] recounted the events …, his description of the cutting instrument … changed" without acknowledging or explaining the inconsistent descriptions. *Id*. at 919. The Seventh Circuit then determined that "[b]ecause no reasonable jury could credit [the plaintiff's] testimony that he waved a sharp metal object or cut himself with a sharp metal object, neither could it conclude that [the defendant] waited five minutes after seeing [the plaintiff] cut himself with that sharp metal object" to call for assistance. *Id*. at 921.

In the instant case, Plaintiff's account as stated in his pleading and as the Court summarized in its Merit Review Order, alleged as follows:

> On November 23, 2018, Defendants K. Johnson and M. Johnson responded to Plaintiff's request to receive his missed medication. Plaintiff characterized K. Johnson's demeanor as belligerent because he badgered, interrupted, and blamed Plaintiff for missing

> his medication. Both Defendants left but returned with a nurse who provided Plaintiff his medication. Afterward, K. Johnson "made full body contact" with Plaintiff, who remained standing at the front of his cell. (ECF 1: p. 6:10.) K. Johnson ordered Plaintiff back into his cell, but when Plaintiff told K. Johnson not to touch him, K. Johnson grabbed Plaintiff and punched Plaintiff in his head, which caused bleeding.

(Doc. 7 at 2.)

Despite Defendant J. Johnson's characterization of Plaintiff's account as utterly implausible, any inconsistencies from the account alleged in his initial pleading and when he was deposed over six years later are to be expected. More importantly, these inconsistencies do not substantiate the rare and exceptional application of the utter-implausibility exception. Additionally, uncorroborated testimony from a nonmovant is sufficient to defeat a summary judgment motion. *See Navejar v. Iyiola*, 718 F.3d 692, 697 (7th Cir. 2013) ("[W]e long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'") (quoting *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010)).

**C. Failure to Intervene**

To succeed on a claim for failure to intervene, a plaintiff must demonstrate that the defendant "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017); *see also Wilborn v. Ealey*, 881 F.3d 998, 1007 (7th Cir. 2018) ("An officer who fails to intervene to try to prevent known cruel or unusual force, despite a reasonable opportunity to do so, may be held liable under § 1983."). "A 'realistic opportunity' means a chance to warn the officer using excessive force to stop." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014) (suggesting that

an officer cannot be held liable for failing to intervene when punches are delivered in quick succession to an inmate but can be held liable for subsequent inaction when the inmate is then dragged across the floor).

Defendants Greene and M. Johnson assert that they are entitled to summary judgment because neither had reason to know a constitutional violation was occurring nor a reasonable opportunity to intervene. Defendants add that "when Plaintiff's utterly implausible testimony is disregarded," the undisputed facts show that Defendant M. Johnson witnessed only the lawful and minimal use of force necessary to accomplish compliance with orders and ensure the safety and security of the facility and facility staff. Similarly, Defendant Greene asserts that Plaintiff's transport to the healthcare unit did not involve anything he would have understood violated Plaintiff's rights. (MSJ, Doc. 98 at 12-13.)

Because the Court has concluded the utter-implausibility exception does not apply to the excessive force claim alleged against Defendant K. Johnson, any argument that Defendants Greene and M. Johnson are also entitled to summary judgment by extension is rejected. *See Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 351 (7th Cir. 2019) (A failure to intervene claim "depend[s] on proof of an underlying constitutional violation.") (holding that the plaintiff's failure to intervene claim failed as a matter of law because he "failed to present evidence supporting an underlying violation").

Plaintiff's pleading alleged that Defendant M. Johnson did not take any action to intervene when Defendant K. Johnson allegedly used excessive force and that Defendant Greene did not intervene when several officers used the restraints applied to Plaintiff's wrist and ankles to carry him to the healthcare unit. (Doc. 1 at 6-7:16; 7:22; Mer. Rev., Doc. 7 at 2-3.)

During his deposition, Plaintiff testified he was alleging a failure to intervene claim against Defendant M. Johnson because "[h]e stood out to the side and remained silent, didn't attempt to apprehend me, nothing." (Pl. Dep. 98-6 at 37:15-18.) Plaintiff also testified that Defendant Green did not intervene when "the sergeant ordered … the officers to [carry] me by my cuffs and shackles, suspending me by them" and then ordering the officer to use Plaintiff's head to ram a door open, which caused laceration and head trauma. (*Id*. at 29:22-23:4.)

Thus, any argument that the utter-implausibility exception also applied to the failure to intervene claims Plaintiff alleges against Defendants Greene and M. Johnson is also rejected. Additionally, the Court rejects any assertion that the court can ignore Plaintiff's testimony. See Whitaker, 144 F.4th at 918 (citing *Chenari v. George Washington Univ.*, 847 F.3d 740, 747-48 (D.C. Cir. 2017) for the proposition that courts may disregard incredible testimony but holding that district court erred by setting aside the plaintiff's testimony).

**D. Due Process**

On November 27, 2018, at 7:45 a.m., Plaintiff signed receipt for an Offender Disciplinary Report charging him with a violation of Rule 102B Assault. (Doc. 98-4 at 6.) Defendant Stewart's name and signature appear as the serving official. Just above the signature line, a box marked with an "X" appears, agreeing to the following: "I agree to waive 24-hour notice of charges prior to the disciplinary hearing." (*Id*.) Below the signature line appeared a perforated section with the following instructions: "(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing). Below that instruction appears the following statement: I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date[.]" (*Id*.) No listed witnesses

appear. (*Id.*)

In support of their Motion for Summary Judgment on Plaintiff's Due Process claim, Defendants append an Adjustment Committee Final Summary Report that lists Defendants Kersh as the Committee Chairperson and King as a Hearing Committee member but not Defendant Stewart. Instead, Kara Sharer, who is not a party to these proceedings, is listed as a third Adjustment Committee Member. However, at the end of the "Basis for Decision" section of the Adjustment Committee report appears a notation stating the "Adjustment Committee notes that [Plaintiff] requested Mental Health Personnel be present during his hearing. MHP Sharer was present." (*Id.*)

No signatures appear on the appended Adjustment Committee Final Summary Report, and Defendants Kirsh and King do not append a declaration supporting their dispositive motion. The Court notes that Defendant Stewart's declaration states that he served Plaintiff with the mentioned ODR on November 26, 2018, Plaintiff waived the twenty-four-hour notice, and Stewart appeared at the Adjustment Committee hearing as the "hearing investigator," without elaboration. (Doc. 98-3.)

Given this unverified and unexplained portion of the record, the Court concludes that Defendants Kersh, King, and Stewart have failed to satisfy their threshold showing of the absence of a material dispute through specific citations to admissible evidence or by showing that the nonmovant cannot produce admissible evidence to support a material fact.

Accordingly, Defendants' Motion for Summary Judgment (Doc. 98) is denied.

**IT IS THEREFORE ORDERED**:

1) **Defendants' Motion for Summary Judgment (Doc. 98) is DENIED.**

2) **The Court refers this case to Magistrate Judge Ronald L. Hanna for a settlement conference. If the parties do not reach a settlement, the Court will set this case on its trial calendar.**

3) **The Court directs the Clerk of the Court to notify Judge Hanna's chambers of the referral.**

Entered October 2, 2026.

s/ *Michael M. Mihm*

**MICHAEL M. MIHM**
**UNITED STATES DISTRICT JUDGE**